**Ethan Levi**, OSB No. 994255
Email: ethan@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

**Attorney for Plaintiff**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **GARY ROBISON,**<br><br>    Plaintiff,<br><br>  vs.<br><br>**OREGON DEPARTMENT OF CORRECTIONS, CHRISTOPHER DIGIULIO, JOE BUGHER, REED PAULSON, DANIEL DEWSNUP, THOMAS BRISTOL, GARTH GULICK, BYRON HEMPHILL, LISA KOLTES, MORIAM BALOGUN, KAREN HARRIS, WARREN ROBERTS, HEIDI MILLER, ANDREW GLASS, and MARY NANETKA,**<br>    Defendants. | Case No.: 3:19-cv-2072<br><br>**FIRST AMENDED COMPLAINT**<br>Civil Rights Action (42 U.S.C. § 1983), Professional Negligence, Negligence<br><br>**Jury Trial Demanded** |

## NATURE OF THE CASE

This is a civil rights and state law negligence action about the defendants' ongoing and

continuing refusal to treat plaintiff's arthritic right knee. Plaintiff is an inmate at the Department of

Page 1 – FIRST AMENDED COMPLAINT

Corrections (hereinafter "ODOC") who suffers from continuing, long-term, chronic right knee pain and arthritis. This is his civil rights action against defendants who continue to deny plaintiff surgery recommended by two orthopedic experts and adequate medication for his pain. The TLC Committee (hereinafter "TLC Committee") defendants are doctor-members and medical staff-members of a committee tasked with approving or denying medical referrals, procedures and treatments for inmates. Defendant Harris is the Medical Provider at the Oregon State Penitentiary, the ODOC facility where plaintiff has been housed since October of 2018.

Medical staff at ODOC recognized plaintiff's chronic knee pain and mobility concerns and forwarded his case to the TLC Committee for further treatment. The TLC defendants, through the TLC Committee, referred plaintiff twice for consultation with two outside orthopedic surgeons to determine the best course of action. Each surgeon recommended a total knee replacement. After receiving these recommendations, the defendants denied plaintiff the procedure multiple times. Concurrently, defendant Harris has refused to provide plaintiff with pain medication sufficient to relieve his knee pain. This denial of treatment has left plaintiff in continuing pain and disability and amounts to both medical negligence and deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

**JURISDICTION**

1. This court has jurisdiction over the subject matter of the First claim for relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4). This court has supplemental jurisdiction, under 28 U.S.C. § 1367, over plaintiff's Second and Third Claims for Relief - professional negligence and negligence. The State of Oregon has agreed to waive 11th Amendment immunity.

## VENUE

2. Venue is proper within the District of Oregon because all of the events giving rise to these claims occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). Specifically, all of the acts and practices alleged herein occurred at Oregon Department of Corrections facilities in Oregon.

## TORT CLAIMS NOTICE

3. With respect to the state law claims for negligence and professional negligence, plaintiff has properly satisfied the notice of claim required by ORS 30.275. First, the negligence is an ongoing harm and continues through the filing of this complaint. Second, the defendants have actual notice of plaintiff's claim because plaintiff filed a federal civil rights complaint alleging the same harm committed by the same individual defendants on December 20, 2019 and because he filed this action.

## PARTIES

4. Plaintiff Gary Robison (hereinafter "Mr. Robison") is an adult resident of Oregon presently residing at the Oregon State Penitentiary in Salem, Oregon, and for all relevant times, in ODOC custody.

5. Defendant, Oregon Department of Corrections (ODOC), is the employer of all the defendants in this matter. It is a public agency tasked with the incarceration, care, treatment and protection of all inmates in its custody. Among its many duties is to employ doctors, nurses and other health care workers and ensure that each inmate receives proper and reasonable medical care. ODOC is vicariously liable under state law for the negligence of its employees.

Levi Merrithew Horst PC

6. Dr. Christopher DiGiulio, M.D. is the chief medical officer of ODOC. He is ultimately responsible for directing the operations of all ODOC medical facilities. He is also ultimately responsible for overseeing the medical staff at all ODOC institutions and ultimately responsible for the delivery of medical care to each inmate. Dr. DiGiulio is bound by the standards and ethics of his profession as well as the rules and policies adopted by ODOC. He is also a member of the TLC Committee and oversees its functions. As a member of the TLC Committee, he is responsible for approving or rejecting proposed medical treatments for ODOC inmates. He is sued in his individual and official capacities.

7. Joe Bugher is the ODOC Medical Services Administrator and the Assistant Director of Health Services. As such, he is responsible for crafting policies and procedures for the ODOC that ensure that ODOC delivers constitutionally and medically adequate care to inmates. He is also responsible for ensuring that inmates receive adequate medical care. One of Bugher's responsibilities is to responding to inmate grievance appeals and investigating whether individual inmates grievances about medical case have been adequately addressed. He is sued in his individual and official capacities.

8. Dr. Reed Paulson, M.D. is an ODOC medical doctor and is the Chief Medical Officer at the Oregon State Penitentiary. As such he is ultimately responsible for all the medical care provided to inmates at the Oregon State Penitentiary and is bound to follow the standards and ethics of his profession as well as the rules and policies adopted by ODOC. He is also a member of the TLC Committee. As a member of the TLC Committee, he is responsible for approving or rejecting proposed medical treatments for ODOC inmates. He is sued in his individual and official capacities.

9. Dr. Daniel Dewsnup, O.D. is an ODOC medical doctor. As such, he is responsible for medically treating inmates at the ODOC and is bound to follow the standards and ethics of his profession as well as the rules and policies adopted by ODOC. He is also a member of the TLC Committee. As a member of the TLC Committee, he is responsible for approving or rejecting proposed medical treatments for ODOC inmates. He is sued in his individual and official capacities.

10. Dr. Thomas Bristol, M.D. is an ODOC medical doctor. As such, he is responsible for medically treating inmates at the ODOC and is bound to follow the standards and ethics of his profession as well as the rules and policies adopted by ODOC. He is also a member of the TLC Committee. As a member of the TLC Committee, he is responsible for approving or rejecting proposed medical treatments for ODOC inmates. He is sued in his individual and official capacities.

11. Dr. Garth Gulick, M.D. is an ODOC medical doctor. As such, he is responsible for medically treating inmates at the ODOC and is bound to follow the standards and ethics of his profession as well as the rules and policies adopted by ODOC. He is also a member of the TLC Committee. As a member of the TLC Committee, he is responsible for approving or rejecting proposed medical treatments for ODOC inmates. He is sued in his individual and official capacities.

12. Dr. Byron Hemphill, D.O. is a doctor of osteopathy employed by ODOC. As such, he is responsible for medically treating inmates at the ODOC and is bound to follow the standards and ethics of his profession as well as the rules and policies adopted by ODOC. He is also a member of the TLC Committee. As a member of the TLC Committee, he is responsible for approving or

rejecting proposed medical treatments for ODOC inmates. He is sued in his individual and official capacities.

13. Dr. Lisa Koltes, M.D. is an ODOC medical doctor. She is responsible for the medical treatment of ODOC inmates and is bound by the standards and ethics of her profession as well as ODOC rules and policies. She is also a member of the TLC Committee. As a member of the TLC Committee, she is responsible for approving or rejecting proposed medical treatments for ODOC inmates. She is sued in her individual and official capacities.

14. Moriam Balogun is a nurse practitioner. She is a medical provider employed by the ODOC and a member of the TLC Committee. As a member of the TLC Committee she participates and helps decide whether the TLC Committee approves or rejects proposed medical treatments for ODOC inmates. She is sued in her individual and official capacities.

15. Dr. Karen Harris, D.O. is an ODOC osteopathic doctor. She is a provider at the Oregon State Penitentiary and responsible for the medical care and treatment of inmates at the Oregon State Penitentiary, including plaintiff. She is also a member of the TLC Committee. As a member of the TLC Committee, she is responsible for approving or rejecting proposed medical treatments for ODOC inmates. She is sued in her individual and official capacities.

16. Dr. Warren Roberts, M.D. is the acting ODOC Medical Director. He has recently been at ODOC at times when defendant DiGiulio has been absent and on leave. As such, he is ultimately responsible to seeing that each subordinate doctor delivers adequate care to each inmate. He is sued in his individual capacity

17. Heidi Miller, N.P. for all relevant times, was an ODOC Nurse Practitioner. As such she was also a member from time to time of various TLC Committees. She was a member of a

LEVI MERRITHEW HORST PC

committee held on February 28, 2019 that denied medical care to Plaintiff. She is sued in her individual capacity.

18. Dr. Andrew Glass, M.D., is an ODOC Medical Doctor. He is also a member of the TLC Committee. As a member of the TLC Committee, he is responsible for approving or rejecting proposed medical treatments for ODOC inmates. He was a member of various TLC Committees that denied Plaintiff medical treatments including but not limited to an April 2, 2020 TLC Committee meeting. He is sued in his individual capacity.

19. Mary Nanetka, N.P. for all relevant times, was an ODOC Nurse Practitioner. As such she was also a member from time to time of various TLC Committees. She was a member of a committee that denied medical care to Plaintiff on October 8, 2020. She is sued in her individual capacity.

20. At all times relevant, all defendants acted under color of state law.

## FACTUAL ALLEGATIONS

21. Plaintiff, (hereinafter "Mr. Robison") was taken into custody at ODOC in January of 2016. His first medical screening revealed he had a severely arthritic left hip and a severely arthritic right knee. At his screening, ODOC learned that Mr. Robison had a history of two right knee surgeries.

22. In February of 2018, Mr. Robison had a hip replacement performed by Dr. Randolph Peterson, MD at Weiser Memorial Hospital.

23. For the duration of his incarceration and continuing to the present Mr. Robison has suffered from chronic, substantial pain and limited mobility in his right knee. He has trouble climbing stairs, he has trouble getting up to a top bunk, has difficulty exercising, and otherwise suffers from constant knee pain and discomfort.

24. Nothing the defendants and the ODOC medical department tried has brought Mr. Robison relief from his knee problems. These efforts include prescribing ibuprofen, mental health medications (Celexa), a knee brace and steroid injections.

25. In an effort to solve Mr. Robison's intractable knee pain, ODOC medical staff referred Mr. Robison to Dr. Peterson, the same orthopedic surgeon who performed his hip replacement operation.

26. On July 27, 2018, Dr. Peterson evaluated Mr. Robison's knee and wrote: "[Mr. Robison] has, however, been having a lot of pain in his right knee. He has had two previous knee operations. First one arthroscopic debridement. (sic) Subsequent 93 ACL reconstruction. X-rays taken of his knee show severe degenerative changes, panarticular osteophyte formation with the most degenerative changes to the medial compartment. Pain is primarily centered in the medial aspect of the knee. Has two metal fixation screws from a previous ACL reconstruction. With the symptoms he is having as well as the findings on x-ray, I have recommended joint replacement surgery as the only alternative for improving his overall knee function."

27. On August 1, 2018, Dr. Peterson forwarded his recommendation for a total knee replacement to the TLC Committee. The TLC Committee denied the recommendation for a total knee replacement; instead, it sought a second opinion from Dr. Yao, another orthopedic surgeon.

28. On October 16, 2018, Mr. Robison saw Dr. Yao. Dr. Yao evaluated Mr. Robison and wrote, "The patient is a 42 year old male who presents with right knee pain. He notes that he had an arthroscopic surgery in 1991 and an ACL repair in 1993. His pain has been getting bad for the last 5 years or so. He can make it about 3 times around the track before the knee starts hurting. His pain is exacerbated with weight bearing and is mainly in the medial aspect of his knee. Varus pressure causes pain in the medial joint line. Just an hour on his feet, he had a lot of pain and can't do much

after that. . . ." Dr. Yao concurred with Dr. Petersen, "We discussed the nature of his osteoarthritis and discussed treatment options including cortisone injections, physical therapy, viscosupplementation injections and a right total knee arthroplasty. . . . If the x-rays demonstrate severe osteoarthritis like I believe it will, it is not out of the ordinary to continue forward with a right total knee arthroplasty. He is a good candidate for surgery except for his young age. I will verify the x-rays and get back with my final opinion."

29. Although ODOC provided Dr. Yao with a compact disc (CD) containing Mr. Robison's x-rays he was unable to open it and unable to complete his evaluation. He requested that the x-rays be sent to him in a reviewable format.

30. On October 22, 2018, the ODOC medical department ordered that Mr. Robison's x-ray film be provided to Dr. Yao so he could complete his evaluation.

31. On November 1, 2018, before Dr. Yao could review the x-rays and complete his evaluation, the TLC Committee considered and rejected Drs. Peterson and Yao's recommendations for a total knee replacement. The TLC committee reasoned that Mr. Robison had not taken part in a bracing trial, there had been no information provided about his functionality in the institution, and that there had been no recent primary care physician examination. Finally the TLC committee noted that Dr. Yao had not completed his evaluation as he was not able to view Mr. Robison's x-rays.

32. On November 29, 2018 the TLC Committee approved "medial off-load bracing," a treatment not recommended by either Dr. Peterson or Dr. Yao.

33. On December 17, 2018, Mr. Robison still had not heard whether Dr. Yao had reviewed his x-rays so he sent a medical request asking that ODOC send Dr. Yao the x-rays. A medical staff member responded, "A new CD was sent along with paperwork to Dr. Yao on 12/13/18."

34. On January 25, 2019, Dr. Yao finally had a chance to review the x-rays of Mr. Robison's knee. He sent ODOC medical staff his conclusion that Mr. Robison was a good candidate for a total knee replacement.

35. On January 31, 2019 ODOC medical personnel began Mr. Robison on a six week bracing trial. The right knee bracing trial did not help Mr. Robison's knee pain or lack of mobility. Mr. Robison repeatedly informed the medical staff that bracing was ineffective.

36. On February 6, 2019 Mr. Robison sent a medical request documenting his continuing knee pain and trouble climbing the stairs. He requested a bottom tier cell.

37. On February 19, 2019, upon his repeated complaints of knee pain, Mr. Robison was given a bottom bunk and low tier restriction for one year.

38. On February 28, 2019, The TLC Committee rejected a further request for total knee replacement, "No, until substantial disability i.e. climbing stairs is proven." The TLC members who signed this include defendants Dr. Reed Paulson, Dr. Daniel Dewsnup, Dr. Thomas Bristol, Nurse Practitioner Moriam Balogun, and Nurse Practitioner Heidi Miller. On information and belief, Dr Harris participated by phone.

39. On March 7, 2019, ODOC medical staff provided Mr. Robison with another treatment not recommended by either Dr. Peterson or Dr. Yao, a steroid injection. This had no marked effect on Mr. Robison's pain. Mr. Robison informed the medical staff that the steroid injection was ineffective.

40. On March 18, 2019, Mr. Robison received a letter from defendant DiGiulio. The letter indicated that "your case for knee surgery will go back to the Therapeutic Level of Care (TLC) committee after you trial the knee brace for 6 weeks."

41. On March 26, 2019, Mr. Robison sent a medical request for medication to relieve his knee pain. "I would like to be put on some pain meds. I shouldn't have to live every day with pain like this. It's like 7-8 pain level all day, every day."

42. On April 10, 2019, Mr. Robison received a letter from J. Bugher the Health Services Administrator. Bugher wrote, "TLC reevaluated your case on 02.27.19 and has decided that surgery is not approved at this time due to a lack of medical necessity. The TLC committee reviewed the recommendations by the orthopedic specialist and your current physical condition, and based on those findings, they do not feel surgery is indicated at this time."

43. On May 8, 2019, Mr. Robison met with Dr. Harris and followed up with her about constant knee pain. He again requested a total knee replacement and requested medication to help with the pain. Dr. Harris formulated a plan for Mr. Robison to have an MRI of his right knee. Thereafter, Dr. Harris forwarded that request to the TLC Committee for approval.

44. On May 16, 2019 the TLC Committee denied a request for an MRI of Mr. Robison's right knee.

45. Mr. Robison has repeatedly requested a total knee replacement and adequate pain management and has repeatedly filed requests and grievances requesting a total knee replacement to no avail.

46. Since first requesting adequate pain medication of Dr. Harris on March 26th, Mr. Robison has requested adequate pain medication from Dr. Harris each time he has met with her. Dr. Harris has refused to prescribe any pain medication beyond ibuprofen and mental health medication such as Cymbalta. None of these medications have effectively treated Mr. Robison's pain.

47. Since June of 2020, Dr. DiGiulio has been on leave from his job at ODOC.

48. On March 27, 2020, Dr. Harris referred the TLC Committee another request to consider a total knee arthroplasty for Mr. Robison.

49. On April 2, 2020, the TLC Committee comprised of Dr. Harris and Dr. Glass, reviewed the Dr. Harris's requests and denied it citing, "Need more information re: function."

50. On June 16, 2020, Mr. Robison was taken back to Hope Orthopedics for another evaluation for a total knee replacement. During that visit, Mr. Robison met with Dr. Sewell. Dr. Sewell noted that Mr. Robison had gained weight – at his visit with Dr. Yao in October of 2018, Mr. Robison weighed 258 pounds, on his visit with Dr. Sewell he weighed 316.5 pounds. Dr. Sewell declined to recommend Mr. Robison for surgery because he was obese and indicated he had to meet a target weight of 270 pounds before he would be a candidate for surgery.

51. In October of 2020, Mr. Robison met his target weight of 270 pounds. He requested a referral for a total knee replacement. Dr. Harris told Mr. Robison he would have to keep his weight at or below target for 90 days before she would refer him to an orthopedic surgeon.

52. On October 6, 2020, Dr. Harris referred Mr. Robison's case back to the TLC Committee. She listed the diagnosis as: "End-stage R knee OA, severe narrowing M>L plateaus and at Petellofemoral Joint. She proposed the following: "Ortho at last institution as well as Dr. Yao proposed TKA. Saw Dr. Sewell at Hope Ortho in May of this year*, Dr. Sewell would recommend @Pt BMI of 40 or 270 lbs. Pt. has lost 40lbs over 3 months since then, and today weighed 270lbs. Recommend TKA, Factors for consideration, discuss as appropriate." The asterisk was addressed later in the TLC referral, "*Office x-ray showed severe tri-compartment disease, joint sclerosis, osteophytes. Bone-on-bone contact demonstrated at medial compartment and patellofemoral joint.

53. On October 8, the TLC committee, including defendant Dr. Harris and Nurse

Practitioner Mary Nanetka, issued its decision: "(1) demonstrate wt. stability over next 90 days (2) check status and function in 90 days."

54. As of February 11, 2021, Mr. Robison has still not gotten a total knee replacement or adequate medications to help with his constant pain.

## FIRST CAUSE OF ACTION

### (Civil Rights 42 U.S.C. § 1983 Against All Defendants)

55. Defendants were deliberately indifferent to Mr. Robison's serious medical needs in the following ways:

    a.    The TLC Committee defendants have repeatedly ignored plaintiff's constant requests for medical relief for his arthritic right knee, ignored objective x-ray evidence, and ignored outside expert advice.

    b.    The TLC Committee defendants sought then ignored expert orthopedic recommendations that plaintiff be provided a total knee replacement.

    c.    Defendant Harris denied Mr. Robison adequate medication for pain relief commensurate with his level of his right knee pain.

    d.    Defendants repeatedly delayed providing Plaintiff with a medically indicated treatment – a total knee replacement – and instead provided treatments that fell below the standard of care and that defendants knew would not resolve Plaintiff's pain and disability.

    e.    Defendant DiGiulio, as ODOC's Chief Medical Officer, did not resolve the TLC Committee's failure to follow the orthopedic expert recommendations that Mr. Robison be given a total knee replacement.

    f.    Defendant Roberts as ODOC's acting Chief Medical Officer after June 2020, ignored Mr. Robison pain and disability and has not resolved the TLC Committee's failure to provide Mr. Robison a total knee replacement.

    g.    The medical staff, including defendant Harris denied Mr. Robison access to knee surgery even though in October 2020 he had lost weight and achieved is target weight of 270 pounds or below.

    h.    Through these actions, defendants engaged in the wanton infliction of pain and subjected Mr. Robison to dehumanizing, painful, and immobilizing conditions from the date he entered ODOC and continuing until the present.

56. Defendants' conduct toward Mr. Robison resulted in an unnecessary infliction of severe pain, discomfort, and immobility that resulted in atypical and significant hardship and subjected him to cruel and unusual punishment under the Eighth Amendment to the United States Constitution, and denying Mr. Robison's right to due process under the Fourteenth Amendment to the United States Constitution.

57. As a result of defendants' violations of Mr. Robison's constitutional rights, he suffered pain, discomfort, physical disability and emotional injury during his incarceration at ODOC. Accordingly, Mr. Robison is entitled to compensatory and punitive damages, as well as his attorney's fees and costs pursuant to 42 U.S.C. § 1988, from defendants for each violation.

**SECOND CLAIM FOR RELIEF**

**Professional negligence through the failure to provide medical care consistent with the standard of care in the community (against ODOC as the employer of all individual medical doctor defendants including Dr. DiGiulio, Dr. Paulson, Dr. Dewsnup, Dr. Bristol, Dr. Gulick, Dr. Hemphill, Dr. Harris, Dr. Roberts, Dr. Glass, Heidi Miller and Mary Nanetka)**

58. Plaintiff incorporates by reference all preceding paragraphs.

59. While ODOC incarcerated Mr. Robison, he was unable to access medical care on his own.

60. ODOC had a constitutional and statutory and administrative duty to provide adequate medical care to all its inmates including Mr. Robison. ODOC is vicariously liable for the professional negligence of its employees.

61. The risk of harm to Mr. Robison was foreseeable to defendants.

62. ODOC, by and through its employees was negligent in its medical treatment of Mr. Robison in that it failed to use that degree of care, skill, and diligence used by ordinarily careful health care providers practicing in the same or similar circumstances in the same or similar community.

63. The professional negligence includes but is not limited to each of the particulars alleged in this complaint.

64. The professional negligence caused Mr. Robison pain and disability.

### THIRD CLAIM FOR RELIEF

**Negligence**
**(Against ODOC as the employer of each physician defendant, and Joseph Bugher)**

65. Mr. Robison incorporates by reference all preceding paragraphs.

66. Mr. Robison's pain and suffering was a reasonably foreseeable result of defendants' failure to ensure that adequate policies, training and supervision were in place so that it could provide adequate medical care to plaintiff.

### REQUEST FOR RELIEF

WHEREFORE, plaintiff prays for relief as follows:

a. For judgment in favor of plaintiff against defendants for compensatory, and punitive damages for each Constitutional violation in an amount to be proven at trial.

b. For non-economic damages for plaintiff's physical pain and suffering and emotional distress experience during his incarceration.

c. For economic damages to be proven at trial.

d. For costs and reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983, 1988 and 12205 and under other applicable law.

e. For Injunctive Relief

   a. Mr. Robison continues to be in the custody of the Oregon Department of Corrections.

   b. Mr. Robison continues to suffer from chronic knee pain and limited mobility.

   c. No other remedy the defendants have proposed and attempted have provided Mr. Robison from relief from his knee pain and disability.

   d. Without a total knee replacement, Mr. Robison will continue to suffer pain and disability while in ODOC custody.

   e. No relief besides a total knee replacement will provide Mr. Robison relief from pain and disability in his knee.

f. For pre-judgment and post-judgment interest.

g. For such other and further relief as may appear just, equitable, and appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**DATED** this 23rd day of February, 2021.

**LEVI MERRITHEW HORST PC**

By:   /s/ Ethan Levi
      **Ethan Levi**, OSB No. 994255
      Email: ethan@lmhlegal.com

610 SW Alder Street, Suite 415
Portland, OR 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092